IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DARRYL W. RUGGLES,**                    Case No. 1:17 CV 2359

    Plaintiff,

    v.                                          Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                        MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Plaintiff Darryl W. Ruggles ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 16). For the reasons stated below, the undersigned reverses the decision of the Commissioner and remands for further proceedings.

## PROCEDURAL BACKGROUND

Plaintiff filed for SSI in March 2014, alleging a disability onset date of December 31, 2006. (Tr. 406-26). His claims were denied initially and upon reconsideration. (Tr. 342-43). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). *See* Tr. 37 Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on April 19, 2016. (Tr. 275-310). On August 12, 2016, the ALJ found Plaintiff not disabled in a written decision. (Tr. 11-22). The Appeals Council denied Plaintiff's request for review,

making the hearing decision the final decision of the Commissioner. (Tr. 1-4); *see* 20 C.F.R. §§ 416.1455, 416.1481. Plaintiff timely filed the instant action on November 9, 2017. (Doc. 1).

**FACTUAL BACKGROUND**

Personal Background, Function Reports, and Testimony

Born in 1957, Plaintiff was 56 years old on the date of his application. *See* Tr. 427. He had a high school education (Tr. 21), and worked as a journeyman electrician for over fifteen years (Tr. 436-37, 461, 516). Plaintiff left the job because of difficulty concentrating, difficulty performing the job, and because he "fell off ladders". (Tr. 516). Since then, Plaintiff worked for a cleaning service for a few months in 2005 (Tr. 289, 440), and cleaned office buildings a few hours per week in 2012 (Tr. 291, 446, 449). In 2015 and 2016, Plaintiff worked part-time in a grocery store deli. (Tr. 281, 287-89, 291, 440).

In a June 2014 function report, Plaintiff reported he could prepare meals, do light cleaning, watch television, and read. (Tr. 467). He spent an hour daily preparing meals such as sandwiches and frozen dinners (Tr. 468), and shopped for groceries and medicine about once per week for an hour (Tr. 469). Plaintiff reported limitations in lifting, squatting, bending, standing, reaching, walking, kneeling, and stair climbing. (Tr. 471). He estimated he could walk for 100 yards before having to stop and rest for five minutes. *Id.* He reported using a cane (not prescribed by a doctor) at times. (Tr. 472). In a November 2014 contact with the Social Security Administration, Plaintiff reported his foot was continually worsening. (Tr. 476).

At the April 2016 hearing, Plaintiff testified he lived in a halfway house since September 2014. (Tr. 282). The facility handled meals and laundry, but Plaintiff was responsible for keeping his room clean. (Tr. 283-84).

Plaintiff believed his left ankle impairment was the primary reason he could not work full time. (Tr. 292). He explained that he had pain, worsened by activity and stairs. *Id.* ("It's just – it's, like, torture going to work."). Plaintiff was told he had arthritis and the only thing that could be done was a joint fusion. *Id.* Plaintiff stated he chose not to do that. (Tr. 292-93). He had an upcoming appointment with orthopedics later that month. (Tr. 293). Plaintiff previously saw an orthopedic physician and underwent injections, which dulled, but did not eliminate, his pain. (Tr. 293-94). At the time of the hearing, he took 800 mg of ibuprofen at least once per day. (Tr. 294). On workdays, he took it right before work, but, he testified, it did not make much of a difference. *Id.* Sometimes he took the ibuprofen more often. (Tr. 298-99).

Plaintiff worked about twenty hours per week (in five- to seven-hour shifts) at a grocery store in the deli department. (Tr. 287, 296). His responsibilities included cutting meat, cleaning equipment, helping customers, and monitoring refrigeration temperatures. *Id.* The heaviest weight he had to lift at his job was fifteen to twenty pounds. (Tr. 291).

Plaintiff rode the bus for thirty minutes to get to his job. (Tr. 284). He walked "a couple hundred yards" from the halfway house to the bus stop, and then 100 yards from his stop to the store. (Tr. 294). During work, he had opportunities to sit down and rest his ankle, depending on business. (Tr. 297). At the end of a workday, Plaintiff had throbbing pain in his ankle, and limped. *Id.* Upon returning home, he would lie down, prop his foot up, sometimes apply ice, and limit his walking until the next day *Id.* He typically worked Saturday, Sunday, Wednesday, and Thursday. *Id.*; *see also* Tr. 298 ("Yes, luckily I don't work more – usually two days in a row and I have that day off []or two days off . . . [t]o recuperate.").

At his prior job – with a cleaning company – Plaintiff worked about 25 to 30 hours per week (Tr. 297) and had to lift a maximum of about twenty pounds (Tr. 290).

3

Relevant Medical Evidence[1]

In 2013 and 2014, Plaintiff received mental health treatment at Far West Center. (Tr. 523-607). In January 2013, Plaintiff reported chronic hip and back pain, for which he took Tylenol or Motrin. (Tr. 524). From February through July 2013, Plaintiff reported he cleaned an office with a friend twice a month and was seeking other employment. (Tr. 544-50). In April 2013, Plaintiff wanted to be more physically active. (Tr. 547). In June, Plaintiff reported "doing things to maintain his home and yard." (Tr. 545). His ability to perform self-care and activities of daily living was adequate (Tr. 529 – August 2013), poor (Tr. 528 – February 2014), good (Tr. 527 – July 2014), or within normal limits (Tr. 526 – October 2014).

In August 2014, Plaintiff underwent a consultative psychological evaluation with Charles F. Misja, Ph.D. (Tr. 514-18). Plaintiff reported severe arthritis in his left foot, causing swelling and pain. (Tr. 515). Dr. Misja noted Plaintiff walked without an assistive device, and with a normal gait; however, he had difficulty getting off the couch after the interview. (Tr. 516). Plaintiff reported activities including watching television, reading, mowing the lawn, vacuuming, cleaning, and occasional meal preparation. (Tr. 517).

That same month, Plaintiff underwent a physical consultative examination with Alexander Hu, D.O. (Tr. 609-15). Plaintiff said left foot pain and severe anxiety prevented him from working. (Tr. 609). He believed he could only sit for one hour, stand for fifteen minutes, walk 300 feet, and lift 150 pounds. *Id.* Dr. Hu noted Plaintiff performed daily living activities without difficulty. (Tr. 610). On examination, Dr. Hu found Plaintiff had tenderness, and slightly decreased range of motion and muscle strength in his left ankle. *Id.*; *see also* Tr. 615 (range of

---

1. Plaintiff challenges only the ALJ's consideration of his physical limitations. *See* Doc. 11, at 12-20. Therefore, the undersigned summarizes only the medical evidence relevant to Plaintiff's physical condition. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (issues not raised in opening brief waived).

motion and strength testing results). Plaintiff had a normal gait, normal sensation, and negative straight leg raising tests. (Tr. 610). He was able to squat and rise from a squat "with ease", rise from a sitting position without difficulty, get on and off the exam table, walk on heels and toes, and stand on one foot bilaterally. *Id.* X-rays showed arthritis "but no acute surgical or pathological process that affect[s] his current disability status." *Id.*

In September 2014, Plaintiff spent time in an inpatient alcohol rehabilitation program (Tr. 501-09) and then transitioned to a sober residence/halfway house (Tr. 508). During the stay, Plaintiff reported a prior left foot fracture, with continued pain over his left ankle. (Tr. 507). On examination, he had normal muscle strength and tone and a normal gait. (Tr. 504).

Plaintiff continued mental health treatment at the Far West Center in 2014 and 2015. (Tr. 616-33). In November 2014, Plaintiff reported he "fe[lt] so much better with both his physical and mental health." (Tr. 618). In August and December 2015, his ability for self-care and activities of daily living were "adequate" and "within normal limits", respectively. (Tr. 629-30). In August, a provider noted Plaintiff worked at a deli 20-26 hours per week, and "walk[ed] to and from bus to store about 1 mile per day". (Tr. 630). During some visits, the provider checked a box indicating a pain assessment was "[n]ot applicable" (Tr. 633 – October 2014; Tr. 631 – April 2015), or did not complete the pain assessment portion of the form (Tr. 632 – December 2014); however, at other visits, providers noted pain from "foot + ankle" (Tr. 630 – August 2015), or "arthritis" (Tr. 629 – December 2015).

In March 2016, Plaintiff sought to establish care with Natalia Parkanzky, N.P., at Neighborhood Family Practice. (Tr. 634). Plaintiff had worked in the deli for nine months; his left ankle and foot occasionally swelled. *Id.* He also had left foot and ankle pain "when not doing anything". *Id.* Plaintiff also had left hip pain, and his right leg got tired from standing on it. *Id.*

The pain sometimes disrupted his sleep; he took ibuprofen, but it no longer helped. *Id.* On examination, Ms. Parkanzky found a decreased range of motion in Plaintiff's left ankle, medial malleolus tenderness, and the left inner ankle was thickened compared to the right. (Tr. 635). Ms. Parkanzy referred Plaintiff to Orthopedics and prescribed ibuprofen 800 mg for pain. *Id.*

The following month, Plaintiff saw Jared Holt, D.O., in Orthopedics. (Tr. 637-41). Plaintiff reported chronic left ankle and heel pain since 1981, which he last saw a physician for in 1991. (Tr. 637). The pain was constant, aching, throbbing pain at the medial anterior left ankle. *Id.* Rest relieved his pain, and "[a] long day of walking, weight bearing" aggravated it. *Id.* He stated the pain progressively worsened over the last several months/years limiting his ability to walk or work. *Id.* On examination, Dr. Holt noted Plaintiff had "significantly limited" range of motion, and generalized tenderness to palpation thought his medial/lateral ankle; he had some pain at the anterior ankle joint. (Tr. 638). X-rays revealed no acute fractures or dislocation, but moderate to severe osteoarthritis, and mild talonavicular arthritis. *Id.*; *see also* Tr. 640 (x-ray impression). Dr. Holt started conservative care including medication, a brace, and strengthening exercises. (Tr. 638). He also noted Plaintiff "likely would benefit from surgical intervention . . . given degree of pathology and his symptoms" but was not a candidate because he smoked. *Id.* Dr. Holt counseled Plaintiff to quit smoking prior to possible surgery and instructed him to follow up in two to three months. *Id.*

*Opinion Evidence*

After his consultative examination in August 2014, Dr. Hu opined Plaintiff was capable of walking for fifteen minutes, sitting for more than an hour at a time, standing for 30 minutes, and lifting over 50 pounds. (Tr. 610). He noted Plaintiff "d[id] not have any substantial physical limitations." *Id.*

6

That same month, state agency physician Gerald Klyop, M.D., reviewed Plaintiff's records. (Tr. 335-37). Dr. Klyop opined Plaintiff could occasionally lift 50 pounds, and frequently lift 25 pounds. (Tr. 335-36). He could stand, walk, or sit for about six hours in an eight-hour workday. (Tr. 336). Plaintiff was limited in pushing and pulling with his left lower extremity (occasional use of left foot controls). *Id.* Dr. Klyop opined Plaintiff could frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds due to left foot arthritis. *Id.* Dr. Klyop noted "some arthritis in [his] left foot and ankle, however it is not so severe as to meet the requirements for disability at this time." (Tr. 341).

In January 2015, state agency physician Stephen Sutherland, M.D., reviewed Plaintiff's records. (Tr. 319-21). He offered the same opinion as Dr. Klyop, with an added limitation to avoiding concentrated exposure to vibration and extreme cold due to pain exacerbation, and avoiding unprotected heights. (Tr. 320-21). Dr. Sutherland also noted the medical evidence showed Plaintiff had "some pain and difficulties due to [his] conditions" but "also show[ed] that [his] conditions do not prevent [him] from performing some work-related activities." (Tr. 325).

*Additional Evidence Submitted to Appeals Council*

In June 2016, Plaintiff saw Joshua Napora, M.D., in Orthopedics. (Tr. 49). Plaintiff reported working "on h[is] feet all day" and having constant pain. (Tr. 197). He said non-steroidal anti-inflammatory medications only helped somewhat. *Id.* Plaintiff was still smoking, but less. *Id.* On examination, Dr. Napora found Plaintiff had generalized tenderness to palpation throughout the medial/lateral ankle, some pain at the anterior ankle joint, pain with inversion and eversion, but no tenderness to palpation over the proximal tibula/fibula or forefoot. (Tr. 197). Plaintiff's range of motion was "significantly limited", and he had minimal pain with passive stretch of his toes. (Tr. 198). X-rays showed subtalar arthritis. (Tr. 198, 200). Dr. Napora

assessed subtalar, talonavicular post-traumatic arthritis, and prescribed Mobic. (Tr. 198). He again noted Plaintiff would "likely would benefit from surgical intervention [a triple arthrodesis], subtalar +/- fusion in the future given degree of pathology and his symptoms." noted Plaintiff was willing to quit smoking for surgery and referred him to Dr. Feighan. *Id.*

In August 2016, Plaintiff saw John E. Feighan, M.D., in Orthopedics. (Tr. 50). Plaintiff reported he worked in a deli on his feet and that he had pain and stiffness throughout the day. *Id.* On examination, Dr. Feighan noted Plaintiff had limited left inversion/eversion and tenderness, but no crepitus at the ankle, good strength "in all 4 planes", and intact sensation. *Id.* X-rays showed post-traumatic osteoarthritis in the left hindfoot. *Id.* He recommended a CT scan to evaluate a bony deformity, but noted Plaintiff likely needed a triple arthrodesis. *Id.*

The CT scan, performed in September 2016 (Tr. 52-53), showed "severe triple arthritis" (Tr. 49). Specifically, the impression was: "Recent posttraumatic deformity of the calcaneus with partial ankylosis of the anterior and middle subtalar joints. Osteoarthritis without bony ankylosis of the posterior subtalar joint. Talonvicular and naviculocuneiform osteoarthritis." (Tr. 53).

At a follow up appointment with Dr. Feighan in October 2016, Plaintiff's physical examination was unchanged, but Dr. Feighan noted "[l]imited hindfoot motion." (Tr. 49). Dr. Feighan noted he would consider a triple arthrodesis in the spring. *Id.*

In May 2017, Dr. Feighan performed the triple arthrodesis surgery. (Tr. 68-69).

<u>VE Testimony</u>

A VE also appeared and testified at the hearing before the ALJ. (Tr. 300-08). The VE testified Plaintiff's deli job was a light exertional, semi-skilled job, and his past office cleaner job was light and unskilled. (Tr. 301) The ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and past work experience who was limited in the way in which the

8

ALJ ultimately found Plaintiff to be. (Tr. 302-04). The VE responded that such an individual could perform jobs such as laundry worker, cook helper, and linen room attendant. (Tr. 303).

ALJ Decision

In her written decision dated August 12, 2016, the ALJ found Plaintiff had not engaged in substantial gainful activity since his application date (March 24, 2014). She found Plaintiff had severe impairments of left ankle osteoarthritis, obesity, affective disorder (major depressive disorder recurrent moderate), anxiety disorder (generalized anxiety disorder), personality disorder (paranoid personality disorder), and substance abuse addiction disorder (alcohol dependence early full remission), but that none of these impairments – singly or in combination – met or medically equaled a listed impairment. (Tr. 13-14). The ALJ then concluded Plaintiff had the physical residual functional capacity ("RFC"):

> to perform medium work as defined in 20 CFR 416.967(c) except he is able to occasionally lift and carry 50 pounds and frequently lift and carry 25 pound[s]. He can stand and walk 6 hours of an 8-hour workday and sit for 6 hours of an 8-hour workday. The claimant can occasionally operate foot controls with the left lower extremity. He can frequently climb ramps and stairs, but never climb ladders, ropes, and scaffolds. He must avoid concentrated exposure to extreme cold, vibration, and hazards. The claimant must avoid all exposure to unprotected heights.

(Tr. 16).[2] The ALJ then concluded, based on the testimony of the VE, that there were other jobs in significant numbers in the national economy that Plaintiff could perform considering his age, education, work experience, and RFC. (Tr. 21). Therefore, she found him not disabled from his application date (March 24, 2014) through the date of her decision (August 12, 2016). (Tr. 22).

**STANDARD OF REVIEW**

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply

---

2. The RFC also contained mental restrictions not at issue here. *See* Tr. 16.

the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. § 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff presents two arguments. First, he contends the ALJ erred in evaluating his RFC, specifically in focusing "on evidence produced early in the adjudicatory period and not reflective of [the fact that Plaintiff's] impairments worsened over time as evidenced by his testimony and the medical records from neighborhood Family Practice." (Doc. 11, at 14-15) (citing Tr. 297-98; 634-43). Thus, he contends the ALJ failed in her duty to consider the entire record. *Id.* at 18. Second, Plaintiff contends that remand is required for the consideration of new and material evidence, namely, a CAT scan and additional medical records from Orthopedic Surgery Clinic related to Plaintiff's left ankle impairment. *Id.* at 19-20. The Commissioner responds that the ALJ's decision is supported by substantial evidence and should be affirmed, and that Plaintiff cannot establish the requirements for a Sentence Six remand. (Doc. 13, at 10-19). For the reasons

discussed below, the undersigned reverses and remands the Commissioner's decision pursuant to Sentence Four of 42 U.S.C. § 405(g).

RFC

A claimant's RFC is an assessment of "the most [he] can still do despite [her] limitations." 20 C.F.R. § 416.945. An RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting, on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2. The phrase "regular and continuing basis" is defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* The RFC "is meant 'to describe the claimant's residual abilities or what the claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Stankoski v. Astrue*, 532 F. App'x 614, 619 (6th Cir. 2013) (quoting *Howard v. Comm'r of Soc. Sec.*, 276 F. 3d 235, 240 (6th Cir. 2002)). In the RFC analysis, an ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence, 20 C.F.R. § 416.929, and consider and weigh medical opinions, 20 C.F.R. § 416.927. When a claimant's statements about symptoms are not substantiated by objective medical evidence, the ALJ must make a finding regarding the credibility of the statements based on a consideration of the entire record. SSR 96–7p, 1996 WL 374186, *1. An ALJ is only required to include those limitations in the RFC that she finds consistent with the record as a whole. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155-56 (6th Cir. 2009).

The adjudicatory period in this case was March 2014 through August 2016. The examining and treating medical evidence in the record regarding Plaintiff's ankle impairment

consisted of Dr. Hu's August 2014 examination (Tr. 609-15), Ms. Parkanzy's March 2016 examination (Tr. 634-35), and Dr. Holt's April 2016 initial orthopedic examination (Tr. 637-41).

In formulating the RFC, the ALJ accorded "substantial weight" to the opinions of the state agency reviewing physicians. (Tr. 20). These opinions were based primarily upon Dr. Hu's August 2014 consultative examination. *See* Tr. 319, 335. Given the chronology, neither reviewing physician had the later records from Ms. Parkanzy and Dr. Holt. It is not *per se* error to rely on an outdated medical opinion, so long as the ALJ considers the post-dated medical evidence in formulating the RFC. *See, e.g., McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (ALJ did not improperly rely upon state-agency physicians' opinions where they were out of date where it was clear ALJ considered the medical examinations that occurred after the opinions were rendered and took into account any changes).

Here, however, the only indication the ALJ considered the later-dated evidence is her statement that "the claimant's treating orthopedist opted to treat the claimant's left ankle osteoarthritis conservatively with the use of medications and an ankle brace for support." (Tr. 18) (citing Tr. 638). The ALJ did not connect this treatment recommendation with the ability to perform medium work as required by the RFC. Notably, on the previous page of her decision, the ALJ thoroughly summarized Dr. Hu's August 2014 consultative examination. (Tr. 17). By contrast, the only consideration the ALJ provided the later-dated evidence is the above statement. *See* Tr. 18. She did not mention Ms. Parkanzy's findings of decreased range of motion or thickened left inner ankle. *See* Tr. 635. She similarly did not mention Dr. Holt's finding that Plaintiff's range of motion was "significantly limited" (Tr. 638), or the x-rays showing moderate to severe osteoarthritis (Tr. 638, 640). Nor was there mention of Dr. Holt's opinion that Plaintiff would "likely benefit from surgical intervention". *See* Tr. 638. These records appear to diverge

13

from Dr. Hu's examination, which found only "slight" decrease in range of motion and muscle strength, and x-rays which showed arthritis "but no acute surgical or pathological process that affect[s] his disability status." (Tr. 610). Although an ALJ can consider all the evidence without discussing each piece individually, *see Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006), because these records differ from the earlier ones, more explanation was required by the ALJ here so that the Court can trace the path of her reasoning. *See Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [when] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.") (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)); *see also Shrader v. Astrue*, 2012 WL 5383120, at *6 (E.D. Mich.) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked.").

In further support of finding Plaintiff was capable of medium exertional work and was less limited than he alleged, the ALJ also explained Plaintiff "later reported that he was able to walk approximately one mile per day and stand up to seven hours per day with normal breaks while working at Giant Eagle". (Tr. 18) (citing Tr. 608, 610, 630, Hearing Testimony). She repeated this reason in the paragraph assigning substantial weight to the state agency reviewers' opinions that Plaintiff was capable of medium work. (Tr. 20). And an ALJ may consider an individual's ability to perform part-time work as one factor in determining disability, but the ability to work part time is not necessarily indicative of the ability to work full time. *See Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013). The undersigned finds the ALJ's reasoning falls short of the substantial evidence standard.

The ALJ is correct that there is a notation in the record that Plaintiff walked approximately one mile per day. *See* Tr. 630 ("walks to and from bus to store about 1 mile per day"). The ALJ cited this later, stating that it was Plaintiff's "report that h[e] could . . . walk one mile." (Tr. 20). However, Plaintiff's testimony was that he walked "a couple hundred yards" to the bus stop, then rode the bus for thirty minutes, then walked "100 yards" from the bus stop to the store. (Tr. 295). This is consistent with his provider's notation that he "walks to and from bus to store". (Tr. 20). Further, the ALJ did not explain how this translates to the ability to stand and walk for six hours per day, five days per week as is required for medium work. *See Fleischer*, 774 F. Supp. 2d at 877; *Shrader*, 2012 WL 5383120, at *6. Plaintiff also testified he did not work more than two days in a row, and on his off days, he had significant pain and limited his walking to rest. (Tr. 297-98); *see also* SSR 96-8p, 1996 WL 374184, at *2 (RFC is ability to do activities on a "regular and continuing basis", defined as "8 hours a day, for 5 days a week, or an equivalent work schedule."). The ALJ did not mention these statements (or explain why they were discounted), but rather only cited the testimony on this point that supported her RFC. While it is up to the ALJ, not this Court, to resolve conflicts in the record, *see Richardson v. Perales*, 402 U.S. 289, 399 (1971), it is not clear from the ALJ's opinion whether she did so, or simply overlooked the contrary evidence. Combined with the reliance on outdated opinion evidence, the undersigned finds that, taken in its entirety, the ALJ's opinion lacks the support of substantial evidence. Remand is thus required for the ALJ to explain her consideration of these medical records, and how they do (or do not) impact Plaintiff's RFC.

Sentence Six Remand

Plaintiff additionally argues a Sentence Six remand is required for the Commissioner to consider new evidence in the form of a CAT scan, and subsequent orthopedic records. (Doc. 11, at 19-20).

Having determined remand is warranted under the fourth sentence of 42 U.S.C. § 405(g), *see supra,* the undersigned makes no finding regarding Plaintiff's contention that this case should be remanded under Sentence Six. On remand pursuant to Sentence Four, the Commissioner should consider the later-submitted evidence because it deals with the ongoing, close-in-time, continued treatment of Plaintiff's left ankle impairment. *See Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 175 (6th Cir.1994) (holding that an ALJ may consider new evidence in a Sentence Four remand); *see also Johnson v. Comm'r of Soc. Sec.*, 2016 WL 7208783, at *6 (S.D. Ohio) (finding a Sentence Four remand ordinarily moots the request for a Sentence Six remand, but that because "the ALJ will be reviewing the record concerning [the at-issue] impairment, he should additionally consider both the records which Plaintiff submitted to the Appeals Council and any other pertinent records in making his decision about whether Plaintiff still retains the [same] residual functional capacity[.]"). *report and recommendation adopted*, 2017 WL 375707; *Datko v. Colvin*, 2016 WL 6208545, at *12 (N.D. Ohio) ("[I]n the Sixth Circuit, when a sentence-four remand has been deemed appropriate, as is the case here, a district court may remand with instructions to hear new evidence where the 'good cause' requirement has not been met.") (citing *Faucher*, 17 F.3d at 174-75), *report and recommendation adopted*, 2016 WL 6157886.

**CONCLUSION**

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying SSI not supported by substantial evidence and reverses and remands that decision under Sentence Four of 42 U.S.C. § 405(g).

 s/James R. Knepp II
United States Magistrate Judge